IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

John and Karin Waldrop as parents and
legal guardians of B.W., The Arc of New
Mexico as legal guardians and next
friends of S.K. and L.D., Lynda and
Joseph Petros as grandparents and legal
guardians of A.J., Daniel and Blanca
Sarabia as parents and legal guardians of
D.S., Lynette Jaramillo as parent and
legal guardian of A.C., Doris Johnson as
parent and legal Guardian of C.J.,
Sharranna and Richard Friedman as
parents and legal guardians of S.F.,
Disability Rights New Mexico and the Arc
of New Mexico,

Plaintiffs,

v.                                                      CIV No. 14-047 JCH/KBM

NEW MEXICO HUMAN SERVICES DEPARTMENT;
NEW MEXICO DEPARTMENT OF HEALTH;
SIDONIE SQUIER, Secretary, New Mexico
Human Services Department, in her official capacity;
RETTA WARD, Secretary,
New Mexico Department of Health, in
her official capacity; CATHY STEVENSON, Director,
Developmental Disabilities Supports Division of the
New Mexico Department of Health, in her official
capacity;

Defendants.

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs John and Karin Waldrop, as Parents and Legal Guardians of B.W., The
ARC of New Mexico, as Legal Guardians and Next Friends of S.K. and L.D., Lynda and
Joseph Petros as Grandparents and Legal Guardians of A.J., Daniel and Blanca
Sarabia, as Parents and Legal Guardians of D.S., Lynette Jaramillo, as Parent and
Legal Guardian of A.C., Doris Johnson, as Parent and Legal Guardian of C.J.,
Sharranna and Richard Friedman, as Parents and Legal Guardians of S.F., Disability
Rights of New Mexico and The ARC of New Mexico, and Defendants New Mexico
Human Services Department; New Mexico Department of Health; Sidonie Squier,
Secretary, New Mexico Human Services Department, in Her Official Capacity; Retta

1

Ward, Secretary, New Mexico Department of Health, in Her Official Capacity, enter into the following Settlement Agreement ("Agreement").   Plaintiffs and Defendants are referred to collectively as "the Parties."

## Recitals

WHEREAS, on February 25, 2014, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief, alleging violations by Defendants of the Medicaid Act and the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

WHEREAS, on March 27, 2014, Plaintiffs filed a Motion for Preliminary Injunction and Memorandum in Support Thereof;

WHEREAS, on March 10, 2015, the District Court entered an Order of Preliminary Injunction granting Plaintiffs' Motion for Preliminary Injunction and Memorandum in Support Thereof and issued a Memorandum Opinion and Order;

WHEREAS, on March 26, 2015, Plaintiffs filed a Motion to Clarify Preliminary Injunction Order and Memorandum in Support Thereof;

WHEREAS, on April 1, 2015, the District Court entered an Order Temporarily Limiting Scope of Order of Preliminary Injunction;

WHEREAS, on April 10, 2015, Defendants New Mexico Human Services Department; New Mexico Department of Health; Sidonie Squier, Secretary, New Mexico Human Services Department, to Her Official Capacity; Retta Ward, Secretary, New Mexico Department of Health, in Her Official Capacity; Cathy Stevenson, Director, Developmental Disabilities Supports Division of the New Mexico Department of Health, in Her Official Capacity, filed their Notice of Appeal from the District Court's March 10, 2015 Order of Preliminary Injunction;

WHEREAS, on April 13, 2015, New Mexico Human Services Department; New Mexico Department of Health; Sidonie Squier, Secretary, New Mexico Human Services Department, to Her Official Capacity; Retta Ward, Secretary, New Mexico Department of Health, in Her Official Capacity; Cathy Stevenson, Director, Developmental Disabilities Supports Division of the New Mexico Department of Health, in Her Official Capacity, filed a Motion for Partial Stay Pending Appeal of Order of Preliminary Injunction;

WHEREAS, on April 24, 2014, the United States Court of Appeals for the Tenth Circuit, issued an Order abating the appeal pending resolution of the Motion to Clarify Preliminary Injunction Order and Memorandum in Support Thereof;

WHEREAS, the Parties have engaged in productive settlement discussions;

WHEREAS, the Parties recognize that this case involves legal issues that may take a prolonged time to fully litigate and resolve and further recognize that continued litigation would be an expensive, lengthy and time-consuming matter;

WHEREAS, the Parties agree that the terms of this Agreement shall not be construed as an acknowledgement, an admission or evidence of liability of Defendants under the Constitution or any federal or state law;

WHEREAS, the Parties agree that this Agreement may not be used as evidence of liability in any other administrative, civil or criminal proceeding;

WHEREAS, the Parties share a mutual interest in seeing that appropriate due process is provided to participants in the New Mexico § 1915(c) Developmental Disabilities Waiver (DDW); and,

WHEREAS, the Parties wish to enter into a Settlement Agreement as is fully set forth herein;

NOW, THEREFORE, the Parties have decided to resolve this matter in the manner set forth below.

## I. Communications

A. Joint Letter to all DDW Participants and Mi Via DD Participants

The parties will send a joint letter announcing the resolution of this matter and some expected changes to the DDW program to all DDW and Mi Via DD Participants no later than May 30, 2015. *See* Attachment 1. Attached will be a sample Notice of Right to Appeal, which will be used in the future. *See* Attachment 2.

B. Director's Release

The Director of DDSD will issue a Director's Release no later than May 29, 2015, clarifying the change in availability of therapy services (i.e. occupational therapy, physical therapy, and speech and language pathology) for DDW Participants. *See* Attachment 3.

C. Letter to DDW Participants who no longer received Family Living or Supported Living Services or received a reduction in Day Services following their first annual ISP on or after November 1, 2012.

By June 15, 2015, the Defendants will send via first class United States mail a letter (Attachment 4) and decision form (Attachment 5) to DDW Participants identified above and their guardians, if applicable, along with a similar memorandum to case managers, setting forth the DDW Participants' options concerning Family Living or

Supported Living Services.  The parties agree that no notice of right to appeal needs to be included with this letter.

D. Letter to all DDW Participants except (a) newly allocated DDW Participants after November 1, 2012, and (b) Jackson class members.

By July 1, 2015, the Defendants will send via first class United States mail a letter requesting notification of any perceived lost services. *See* "catch-all" letter yet to be drafted and approved.

E. Instructions to Case Managers (yet to be drafted and approved) regarding individuals whose ISP and budget expired prior to October 31, 2015.

For individuals with an ISP and Budget that expires prior to October 31, 2015, the ISP and Budgets will be renewed and revised, if needed, according to current procedures (including access to therapies allowed under the Director's Release). These individuals may apply under the DOH "Group H" policy and procedure for Family Living, Supported Living, or additional "day" services if the IDT can justify the clinical need for these services, regardless of the individuals' DDW Group assignment.

## II.  Performance of SIS Assessment

Each DDW Participant will receive a periodic SIS assessment at an interval of approximately three years.  Prior to each SIS assessment, DDW Participants—and guardians (if applicable) —will receive a Pre-SIS Letter.  *See* Attachment 6.

Until a DDW Participant receives a new SIS assessment through the regular cycle, his or her IDT will use the existing SIS assessment and other information for planning purposes.

SIS assessments will be conducted in the same manner as previously performed, utilizing AAIDD-certified SIS assessors employed by Defendants' outside contractor or contractors.  DDW Participants may, if desired, have counsel present to observe the performance of the SIS assessment.  However, counsel will not participate in or interrupt the performance of the SIS assessment.  Additionally, the SIS assessors will be available to participate in Fair Hearings if the Outside Reviewer relied on the SIS assessment in the denial of any service at issue in the case.

## III.  Verification

The verification process will operate as currently conducted until the Outside Review process is fully operational and will not result in lower benefits than would have been assigned through the SIS assessment process.  Once the Outside Review process is in place, the Outside Review contractor will perform the functions currently performed in the verification process.

## IV. Requests for Reassessment

Defendants shall use the present criteria for SIS reassessment – change in circumstances and problems with protocol – and the Pre-SIS letter will address how to make protocol concerns heard during the assessment.  Any request for reassessment must be postmarked within 30 days of the date of the DDW Planning Packet cover letter (Attachment 7).

## V. DDW Planning Process

### A. DDW Planning Packet

Each DDW Participant, case manager, and guardian (as applicable), will receive a DD Waiver Planning Packet containing the following:

- Informational Instructions Cover Letter *(Attachment 7)*
- Notice that the DD Participant's existing services and benefits will continue in effect until the resolution of the procedures described below.
- A report called *My Supports Profile* created by AAIDD for that DDW Participant.
- Notice of the DDW Group assignment and associated service package.
- Notice of the proposed annual budget for that DDW Participant.
- A copy of the DDW Group Assignment Decision Rules.

### B. Roles and Responsibilities of the IDT

- The IDT should consider the DDW Group's suggested service packages and proposed budget with the understanding that the focus must always be on the individual's DD Waiver support needs that can be clinically justified.
- The ISP must include specific clinical justification of the services and supports requested, and the IDT must compile and attach any documents necessary to justify the requested services and supports.
- Once the IDT prepares the ISP setting forth specific clinical justifications for requested services, the Case Manager shall develop a requested budget for submission to the Outside Reviewer.

## VI. Outside Review

Defendants will contract with an independent third party (the "Outside Reviewer") to provide clinical review of the requested services.  The DDW Participant, case manager, and/or guardian may submit to the Outside Reviewer additional information relating to support needs.

5

The Outside Reviewer will make a written clinical determination on whether the requested supports are needed, and will recommend whether the requested annual budget should be approved.  The DDW Participant, case manager, and guardian (if applicable) will be provided with this written determination and notice of an opportunity to request a fair hearing.

Plaintiffs may provide input in developing the scope of work, clinical criteria, and qualifications for the Outside Reviewer with Defendants having the final decision-making for all three areas.  Plaintiffs will respond within seven (7) calendar days of Defendants providing drafts of each.

Overview of Outside Review Process:

1. The IDT is responsible for compiling information to identify the needs and to justify the requested services and budget.

2. The Case Manager submits proposed ISP and budget to the Outside Reviewer approximately sixty (60) days prior to the expiration of the ISP with all necessary justification.

3. The Outside Reviewer will review every proposed DDW ISP and budget within ten (10) business days of receipt.

4. The Outside Review Program Coordinator confirms that the packet is technically complete and assigns it to an Outside Review team for review or returns it to the case manager for additional justification.  If clinical justification is absent for a specific requested service, the Outside Review Team will send a request for additional information for justification to the Case Manager with a copy to the DDW Participant and guardian, if applicable (RFI).

5. If the Outside Review Program Coordinator sends an RFI to the Case Manager, the Case Manager must provide additional justification within ten (10) business days of transmission.  If justification is received within ten (10) business days of transmission, the packet is forwarded for clinical review.  If justification is not received by the eleventh day, the services for which there is insufficient justification will be technically denied.

6. The Outside Review Team Lead reviews the packet and convenes the appropriate Outside Review Team.

7. The Outside Review Team completes a review of the Outside Review packet (i.e. proposed ISP, requested budget, and supporting materials) and renders its decision (i.e. approval, denial, or partial denial) within ten (10) business days from the date of receipt of the packet from the Program Coordinator.

8. If the Outside Review Team approves in whole or part the requested ISP and budget, it must send the approved portion of the budget to the State's Third Party

Assessor, and the Third Party Assessor must enter the budget into the Medicaid Management Information System and issue a prior authorization to the Case Manager within ten (10) business days.  The Outside Reviewer will send an approval letter to the Case Manager.

9. If there is a denial in part or whole, the Outside Review Team's decision must be in writing, identify the materials reviewed, and state the reasons for any denial of requested services.  The DDW Participant, case manager, and guardian (if applicable) will be provided with this written determination and notice of an opportunity to request a fair hearing. More specifically, the decision will include:

   a.  A list of all documents and input considered by the Outside Review Team during their review;

   b.  Specific and comprehensive justification for the denial of any requested DDW service, including the clinical, factual basis for the decision.

   c.  A notice of the opportunity to request a fair hearing contesting the Outside Review Team's decision as well as an Agency Review Conference ("AC").  *See* Part VII.

10. The decision of the Outside Review Team is binding on the State.  However, the State may agree to overturn a decision to deny services at a requested AC.

11. Anticipated Timeline for implementation of the Outside Review Process shall be as follows:

| | |
|---|---|
| May | Create SOW for UNM to consider |
| June 1 | Meet w/ UNM or other contractor |
| July | Create SOPs for DDW Outside Reviewer |
| June-Oct | Train DDSD & MAD staff, train Case Manager's, Providers, and Clients on clinical justification, train Outside Reviewer Staff/Qualis |
| Nov 1 | Outside Reviewer begins reviewing ISPs & Budgets based on expiration of ISP (Dec. ISPs) |

## VII.  Agency Review Conference

An agency review conference (AC) means an optional conference offered by the DOH to provide an opportunity to informally resolve a dispute over the denial, suspension, reduction, termination or modification of DDW benefits or services. An AC will be attended by the DDW Participant and/or the authorized representative and by a representative of the DOH. The DDW Participant may also bring whomever they wish to assist them during the AC. The AC is optional and shall in no way delay or replace the fair hearing process or affect the deadline for a fair hearing request.

An authorized representative means any individual designated by the DDW Participant or his or her guardian, if applicable, to represent and act on behalf of the DDW Participant. The authorized representative must provide formal documentation authorizing him or her to access the identified case information for this specific purpose. An authorized representative may be, but need not be, a guardian or an attorney representing the DDW Participant.

If a resolution is reached through the AC, DOH will issue written notification within seven (7) business days of the AC to the DDW Participant, the guardian (if applicable), and the case manager.  Unless the fair hearing request is withdrawn by the DDW Participant or guardian, any requested fair hearing will proceed.  The case manager will then prepare a budget for submission to the Third Party Assessor based on that resolution.

## VIII.  Fair Hearing

DDW Participants will be given a Notice of a Right to Appeal when the Outside Reviewer issues its decision, and DDW Participants may request a fair hearing consistent with the timelines and procedures in the New Mexico Administrative Code.

DDW Participants will be scheduled for a fair hearing before an ALJ with the Fair Hearings Bureau of HSD.  At the fair hearing, DDW Participants will not be limited in the information and issues that they may choose to present or raise.  DOH and/or HSD will assure the presence of all necessary witnesses, including, when relevant to a denial of services or when requested by the DDW Participant, the SIS assessor, a representative(s) of the Outside Reviewer who has knowledge of the reasons for the denial in whole or part of any requested services, and necessary witnesses within DOH's control. No ex parte communications with an ALJ are permitted by any DDW Participant or counsel regarding any pending case. The MAD Director shall not have ex parte communications regarding any pending case with any DDW Participant or counsel involved in that case. The MAD Director's decision shall be limited to an on the record review.

Once any fair hearing has concluded, the IDT will develop an ISP and budget for submission to the third party assessor based on the outcome of the fair hearing.

## IX. Appeals from Third Party Assessor decisions related to budget submissions

Until the Outside Review process is fully implemented, a DDW Participant will have the right to appeal any decisions under the current process made by the existing Third Party Assessor (Qualis letters subject to approval).

## X.  Miscellaneous

Training:

By May 28, 2015, Plaintiffs will provide to Defendants a list of suggested topics for training.

Rules and Regulations:

DOH and HSD shall amend the relevant rules under the NMAC to implement the provisions set forth above.  To the extent that existing rules may conflict with the terms of this Agreement, this Agreement shall control.  Plaintiffs will provide within seven (7) calendar days written comments to draft regulations provided to them by Defendants prior to formal public notice.

"H" Process:

Defendants agree that access to residential services will be available through "Group H" policy and procedure if clinical criteria are met.  Defendants will review their current "Group H" policy and, if necessary, modify that policy to allow access to residential services regardless of an individual's Group Assignment based upon clinical demonstration of need.  DDW Participants, guardians, if applicable, and case managers will be informed of any changes to the policy.  The parties recognize that once the Outside Review process has been implemented, there may be a reduction of requests for additional services through "Group H."  Defendants will instruct Case Managers that a "Group H" application must be initiated if the guardian or DDW Participant requests it.

## XI.  Court Approval and Dismissal of Lawsuit/Appeal

Court Approval:

This executed Agreement shall be submitted to the Court for its consideration.  If the Agreement is approved, the Court shall enter an Order Approving the Settlement Agreement, and the Order shall include a finding that the terms of the Agreement constitute compliance with the Order of Preliminary Injunction and satisfy Constitutional Due Process requirements.  The Order entered by the Court will specifically provide that the Court will retain jurisdiction to enforce the terms of this Agreement based upon the time limitations contained in the following paragraph.

Period of Enforcement:

If this Agreement is approved by the Court, all parties shall be bound by the terms of the Agreement for a period of only two years from the date that the Outside Reviewer receives the first Outside Review packet.  During this time, all terms of this Agreement shall remain in effect.  If there are changed circumstances that require a

change to this Agreement, the parties will meet and confer in an effort to modify the terms of this Agreement.

Motions for Enforcement:

The parties agree that any motion for enforcement filed within the two-year period is timely and is subject to the jurisdiction of the Court for enforcement. Any motion to enforce will be limited to systemic issues and not solely address individual cases. The parties will engage in informal resolution efforts prior to the filing of formal motions.

Dismissal:

Upon execution of the Agreement, Plaintiffs will voluntarily dismiss Cathy Stevenson as a party defendant in this matter.  Upon entry of the Order Approving the Settlement Agreement, the parties will file a joint motion for dismissal with prejudice reserving jurisdiction as outlined above.

Upon entry of the Order of Dismissal with Prejudice, Defendants will timely move to dismiss their pending Tenth Circuit appeal.

CMS Approval:

If at the time of the waiver renewal CMS does not approve the renewal application because of this Settlement Agreement the parties will meet and confer as to how to proceed.

## XII.  Release

Upon entry of the Order of Dismissal with Prejudice, Plaintiffs shall release Defendants from all claims relating to the instant action.  Notwithstanding this general Release, nothing in this Settlement Agreement shall be construed as a waiver of fair hearing rights for any DDW Participant.

Upon entry of the Order of Dismissal with Prejudice, Plaintiffs, on behalf of themselves, hereby release Defendants, their officials, employees, agents, representatives, successors and assigns from any and all claims, demands, actions, and causes of actions that were raised or could have been raised based upon the factual allegations contained in the Amended Complaint.

As consideration for the release granted herein, the Defendants each agree to perform the tasks set forth in this Settlement Agreement.

Each party to this Agreement represents and warrants that the persons who have signed this Agreement on behalf of his or her entity or successor entities are duly authorized to enter into this Agreement and to bind that party its successors and assigns to the terms and conditions of this Agreement.

10

## XIII.  Attorney Fees

As to attorney fees and costs incurred up to the execution of this Agreement, counsel for Plaintiffs will receive their reasonable attorney fees and costs.  Plaintiffs' counsel will provide an itemized statement no later than seven (7) calendar days after the execution of this Agreement.  If the parties are unable to reach a negotiated agreement as to fees and costs, Plaintiffs will petition the matter to the Court.

As to attorney fees and costs incurred in connection with the filing of any Motion to Enforce the Settlement Agreement, the Section 1988 standard for fee awards will apply.

## XIV.  General Provisions

The parties represent and acknowledge that this Agreement is the result of extensive, thorough and good faith negotiations.  The parties further represent and acknowledge that the terms of this Agreement have been voluntarily accepted, after consultation with counsel, for the purpose of making a full and final compromise and settlement of any and all claims, allegations or defenses set forth or that could have been set forth by the parties in the lawsuit.

The parties agree and acknowledge that this Agreement and Release, together with the Attachments, represent the entire agreement between the parties, and that the terms of this Agreement and Release are contractual and not a mere recital.  The Parties agree that this Agreement and Release is a contract enforceable by the Parties.

This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same Agreement.  All references to signature or execution of the Agreement shall be calculated from the date on which the last party or party's representative executed the Agreement.

Subject to signatures of the parties and parties' representative, the above represents the terms of settlement reached on May 14, 2015 at 8:25 p.m.

11

Defendant Brent Earnest, in his official capacity as the Secretary of the New Mexico Human Services Department, hereby agrees to and executes the above Settlement Agreement and Release.

NEW MEXICO HUMAN SERVICES DEPT.


By _____
    HONORABLE BRENT EARNEST


Date _May 19, 2015_____

Defendant Retta Ward, in her official capacity as the Secretary of the New Mexico Department of Health, hereby agrees to and executes the above Settlement Agreement and Release.

NEW MEXICO DEPARTMENT OF HEALTH

By _Retta Ward_____
HONORABLE RETTA WARD

Date_5/18/15_____

FROM :WALDROP                    FAX NO. :505 298 5893            May. 18 2015 02:09PM  P1

*Kohn Waldrop*

Plaintiff  *John Waldrop*                           as  legal  guardian  for
*Brian Waldrop*                        , hereby  agrees  to  and  executes  the
above Settlement Agreement and Release.

*John Waldrop*
PRINTED NAME

*Guardian for Brian Waldrop*
TITLE

*Joh Waldrop*
SIGNATURE

Date  *5/18/16*

Plaintiff  The Arc of New Mexico by and through its Executive Director, Randy Costales, hereby agrees to and executes the above Settlement Agreement and Release.

Randy Costales
PRINTED NAME

Executive Director
TITLE

SIGNATURE

Date 5/19/15

Plaintiff *Lynette Jaramillo* , as legal guardian for *Annabelle Campbell* , hereby agrees to and executes the above Settlement Agreement and Release.

PRINTED NAME *Lynette Jaramillo*

TITLE *gaurdian*

SIGNATURE

Date *5-20-15*

Plaintiff _Doris C. Johnson_____ , as legal guardian for
_____, hereby agrees to and executes the
above Settlement Agreement and Release.

_Doris C. Johnson_____
PRINTED NAME

_Mother / Guardian_____
TITLE

_Doris C. Johnson_____
SIGNATURE

Date _May 18, 2015_____

Plaintiff _Sharranna Friedman_____, as legal guardian for
_Sarah Friedman_____, hereby agrees to and executes the
above Settlement Agreement and Release.

_Sharranna Friedman_____
PRINTED NAME

_legal guardian, parent_____
TITLE

_Sharranna Friedman_____
SIGNATURE

Date___5-18-15_____

Plaintiff _Richard N Friedman_____, as legal guardian for _Sarah Friedman_____, hereby agrees to and executes the above Settlement Agreement and Release.

_Richard N Friedman_____
PRINTED NAME

_Guardian_____
TITLE

_____
SIGNATURE

Date___5/18/15_____

Plaintiff Disability Rights New Mexico by and through its Executive Director, James Jackson, hereby agrees to and executes the above Settlement Agreement and Release.

_James Jackson_
PRINTED NAME

_Executive Director_
TITLE

_[signature]_
SIGNATURE

Date _5/18/2015_

May 21 15 06:39p      Papajade08                          505 896 1622            p.2
     MAY-21-2015 THU 12:33 PM DISABILITY RIGHTS NM      FAX NO. 505 2583184      P. 02

Plaintiff *BLANCA R. SARABIA* _____, as legal guardian for *DANIEL M SARABIA JR* _____, hereby agrees to and executes the above Settlement Agreement and Release.

*BLANCA R. SARABIA*
PRINTED NAME

*Guardian — Mother*
TITLE

*Blanca R Sarabia*
SIGNATURE

Date *5 - 21 - 2015*

Plaintiff _Lynda Petros/Joseph Petros_ as legal guardian for _Amber Jimenez_, hereby agrees to and executes the above Settlement Agreement and Release.

_Lynda Petros   Joseph Petros_
PRINTED NAME

_legal Guardian_
TITLE

_Lynda Petros   Joseph Petros_
SIGNATURE

Date _5-19-15_

<u>LIST OF ATTACHMENTS</u>

1     Joint Letter

2     Notice of Right to Appeal (info on AC to be added)

3     Director's Release

4     Options Letter to 200+

5     Decision Form to 200+

6     Pre-SIS Letter

7     Planning Packet Letter

Dear DD Waiver Participants and Guardian, if applicable:

The purpose of this letter is to inform you of changes to the DDW as a result of a court-approved settlement agreement in the *Waldrop* lawsuit against the State brought by Disability Rights New Mexico and the ARC of New Mexico.

The State will continue to use the Supports Intensity Scale (SIS) for person centered planning and to establish group assignments with suggested service packages and a proposed budget. The IDT should consider the DDW Group's services and budget along with additional documentation when developing the ISP and identifying services. Your IDT will get a DDW Planning Packet that includes your <u>My Supports Profile</u> Report, and you will also receive information on the DDW Group assignments and suggested service packages. If the IDT determines you need services not included in your suggested service package, you may request those services with appropriate clinical justification.

The New Mexico Department of Health (DOH) and the Human Services Department (HSD) will implement a **new** process for the review of all DDW participants' ISPs, budgets and required documentation to determine whether **all** requested services are clinically justified based on established criteria.

The DOH will contract with an independent third party (the "Outside Reviewer") to conduct a clinical review of all requested services. The Outside Reviewer will make a written clinical determination on whether the requested supports are needed and will recommend whether the requested ISP and budget should be approved. If the Outside Reviewer denies any part of your budget, you will have an opportunity to request a fair hearing.

These changes will require system-wide training for DDW participants, families, guardians, case managers, providers and DDSD staff. The DOH and HSD will be sending out additional communication regarding the new Outside Review process and training timelines.

The Outside Review process will begin in Fall 2015 and will be based on annual ISP expiration dates. Once all parties have been trained, your case manager will be your primary point of contact.

For individuals with an ISP and Budget that expire prior to October 31, 2015, the ISP and Budgets will be renewed and revised, if needed, according to current procedures, including access to up to three therapy disciplines. These individuals may apply under the DOH "Group H" policy and procedure for Family Living, Supported Living or additional "day" services if the IDT can justify the clinical need for these services, regardless of the individuals' DDW Group assignment.

If you are a Mi Via Waiver participant, you have the right to exercise your freedom of choice to return to the Traditional DDW.

Thank you for your patience as we implement these changes. If you have any questions, please contact your local DDSD Regional Office.

**ATTACHMENT 1**

**NEW MEXICO**
**DEPARTMENT OF**
**H ALTH**

SUSANA MARTINEZ, GOVERNOR                    RETTA WARD, CABINET SECRETARY

---

## Notice of Right to Appeal

Administrative Fair Hearings:
You will have the option of requesting an Administrative Fair Hearing at the conclusion of the outside clinical review. An Administrative Fair Hearing is an evidentiary hearing held before an impartial Administrative Law Judge to review any adverse action by DDSD, HSD, the outside clinical review contractor, or the Third Party Assessor.

Making a Request and Timelines:
This hearing is conducted by the HSD Fair Hearings Bureau. You have 90 days from the date of a letter relating to a denial, suspension, reduction, termination or modification of DDW benefits or services to ask for a hearing.

You or your legal representative can ask for a hearing by calling or writing to:

**New Mexico Human Services Department Fair Hearings Bureau**
**P.O. Box 2348**
**Santa Fe, New Mexico, 87504-23248**
**Telephone: 505-827-8164**
**Toll-free: 1-800-432-6217, option 6**
**Fax: 505-827-8157**

Continuation of Benefits:
If you or your legal representative timely request an Administrative Fair Hearing, then your existing services and benefits will remain in effect until the final resolution of any fair hearing decision or appeal.

Preparing for Your Hearing:
At your Fair Hearing, you may raise any challenge to your SIS scores, DDW group assignment, the decision of the outside clinical review contractor or the decision of the Third Party Assessor, or any other matter regarding any denial, suspension, reduction, termination, or modification of DDW benefits or services, or any failure to act with reasonable promptness.

You have the right to be represented by a lawyer of your choice.

You will also have the right to have a friend, family member or spokesperson represent you and/or be present.

Prior to the hearing you will be provided with a summary of the evidence in your case and any other documents on which the decision was based.

You will also have the right to present evidence and witnesses.

If the State introduces the SIS assessment as evidence, the SIS assessor will be present and subject to cross-examination.

If the State introduces the outside clinical review contractor's decision as evidence, a representative of the outside clinical review contractor will be present and subject to cross-examination.

Hearings are usually by telephone.   The Fair Hearings Bureau will advise you and your representatives, if applicable, about the date, time, and place of your hearing.

Dismissal of Fair Hearings:
Please be aware that the Fair Hearings Bureau may recommend dismissal of a request for a Fair Hearing if the request is not received in the 90 day deadline, the request is withdrawn or cancelled in writing by the claimant or the claimant's authorized agent, or the claimant fails to appear at a scheduled hearing without good cause.

Additional Appellant Rights:
If a Fair Hearing is held the Administrative Law Judge will render a recommended decision in writing.  The Medical Assistance Division Director will then issue a Final Decision in writing.  If the Medical Assistance Division Director issues a final decision in favor of the department and against you, the claimant, you will have additional rights of appeal.

\\Abq-tamarack\ProData\006352-047090\Client Documents\2725302.docx

**DEVELOPMENTAL DISABILITIES SUPPORTS DIVISION (DDSD)**

**DIRECTOR'S RELEASE (DR)**     **EFFECTIVE DATE:** ~~May 2015~~ June 1, 2015

| | |
|---|---|
| Signature Date: | May 2015 |
| FROM: | **Signature on File** <br> **Cathy Stevenson, DDSD Director** |
| TO: | All DD Waiver providers, DDSD staff and DHI surveyors |
| SUBJECT: | Allowance of three therapy disciplines |

## I.  SUMMARY:

The purpose of this Director's Release is to remove restrictions in the current DD Waiver which limit the amount of therapy a DD Waiver recipient receives and to allow every DD Waiver recipient to receive services from up to three (3) therapy disciplines (Physical Therapy, Occupational Therapy and Speech and Language Pathology,) through the Developmental Disabilities Home and Community Base Waiver (Developmental Disabilities Waiver or DD Waiver) if clinical criteria are met.

## II.  REQUIREMENT AMENDMENTS OR CLARIFICATIONS:

A. All three therapy disciplines: Physical Therapy (PT,) Occupational Therapy (OT,) and Speech and Language Pathology (SLP) will be available to all DD Waiver recipients if they and their Interdisciplinary Team (IDT) determine the therapy disciplines are necessary.

B. PT, OT, and SLP, with the exception of the initial therapy assessment and evaluation, must have prior authorization using the Therapy Services Prior Authorization Request (TSPAR-attached.)  No changes have been made to the TSPAR process.

C. The case manager is responsible for submitting the revised budget worksheet and the TSPAR to the Medicaid Third Party Assessor.

## III. DEFINITIONS:

**CASE MANAGER**: The individual responsible for service coordination for individuals with intellectual and/or developmental disabilities (I/DD) on the Medicaid Developmental Disabilities Waiver (DDW). The Case Manager is external to and independent from all other direct services provided to the individual.

**INTERDISCIPLINARY TEAM (IDT) MEMBERS:** The interdisciplinary team (IDT) is responsible for the development of the individual service plan (ISP) and for identifying the agencies and individuals responsible for providing the services and supports identified in the ISP. The IDT shall consist of the following core members: individual, case manager, guardian, helper,

1

**ATTACHMENT 3**

key community service provider staff, direct service staff, service coordinator, ancillary service providers, designated healthcare coordinator, and others.

**NEW MEXICO MEDICAID THIRD PARTY ASSESSOR (TPA):** The contractor that determines and re-determines Level of Care (LOC) and medical eligibility as well as review and approval of Individual Service Plans and prior authorization and utilization management activities for the Developmental Disabilities (DD) Waiver Program.

**PRIOR AUTHORIZATION**: The process for submitting a request for approval of services for budgeting and billing purposes.

**PHYSICAL THERAPY**: Physical therapy is a skilled licensed therapy service involving the diagnosis and management of movement dysfunction and the enhancement of physical and functional abilities.  PT addresses the restoration, maintenance and promotion of optimal physical function, wellness and quality of life related to movement and health.

**OCCUPATIONAL THERAPY:** Occupational therapy is a skilled licensed therapy service involving the use of everyday life activities (occupations) for the purpose of evaluation, treatment and management of functional limitations.  OT addresses physical, cognitive, psychosocial, sensory and other aspects of performance in a variety of contexts to support engagement in everyday life activities that affect health, well-being and quality of life.

**SPEECH AND ~~LANGAUGE~~ LANGUAGE PATHOLOGY:** Speech and language services is a skilled therapy service provided by a SLP that involves the non-medical application of principles, methods and procedures for the diagnosis, counseling and instructions related to the development of and disorders of communication including speech, fluency, voice, verbal and written language, auditory comprehension, cognition, swallowing dysfunction and sensorimotor competencies.

**THERAPY SERVICE PRIOR AUTHORIZATION REQUEST** (TSPAR): DDSD form to request prior authorization for on-going therapy services.

**IV. REFERENCES**
None



& AC info

**Options Letter to 200+**
**Date**

Dear DD Waiver Participant/Guardian:

According to our records, you were an adult 18 years or older enrolled in the DD Waiver Program as of November 1, 2012, and you were receiving Family Living or Supported Living services under an approved ARA budget at that time.  You later received a needs assessment utilizing the Supports Intensity Scale® (SIS®) and were assigned to a DD Waiver Group A, B, C, D, E, F or G.  As a result of that transition, you are no longer receiving Family Living or Supported Living services, and you may also have seen a reduction in Day Services.

The New Mexico Department of Health/Developmental Disabilities Supports Division (DOH/DDSD) and the Human Services Department (HSD) will restore your Family Living or Supported Living services to you but **only** if you choose to have those Family Living or Supported Living services returned to you.  DOH/DDSD and HSD need to hear from you about your preference.

No matter which option you and your guardian select in terms of your living situation at this time, at your next ISP, your IDT must consider both your most recent SIS assessment and additional information in planning for your service needs. This planning may or may not result in the continuation of Family Living and Supported Living Services in the future. You will also be required to undergo a needs assessment utilizing the Support Intensity Scale® (SIS®) following the regular three-year cycle.

**ATTACHMENT 4**

In regards to your Day Services, you and your guardian need to decide if you want to return to your level of service from your last ISP prior to November 1, 2012 (under your old ARA budget) or stay at the level authorized in your current ISP and budget. Please talk to your case manager if you have questions about any of these decisions.

You and your guardian (if applicable) are required to meet with your case manager and your IDT to review this letter and the enclosed Decision Form for Family Living, Supported Living, and Day Services.

With regard to your living situation, you and your guardian (if applicable) must choose between:

1) returning to Family Living or Supported Living, or,

2) remaining in your current living care arrangement under the current services and budget.

With regard to your Day Services, you and your guardian (if applicable) must choose between:

1) returning to the level of your previous Day Services, or

2) remaining in your current level of Day Services under the current services and budget.

In the future, your Interdisciplinary Team (IDT) will need to develop a person-centered Individual Service Plan (ISP) with a focus on your DD Waiver support needs that can be clinically justified. The ISP must include specific clinical justification for the services and supports requested, and the IDT must attach any documents appropriate to justify the recommended services and supports. The ISP and the requested budget prepared by the IDT will be subject to a new outside clinical review process. **It is possible that the IDT planning process or the outside clinical review process could potentially result in a reduction or loss of some of your benefits or services.**

However, no matter which options you select in terms of your living situation or day services, **those services that you choose will remain in effect until (a) your next ISP and budget have received final approval or (b) the final resolution of any fair hearing or appeal.**

Once you and your guardian (if applicable) meet with your case manager and IDT and review the options regarding your living situation and day services, please complete, sign and date the attached Decision Form.  Your case manager will submit the signed and completed Decision Form, but please make sure that you and your guardian receive a copy of the completed, signed and dated Decision Form with the case manager's attestation.

HSD and DOH appreciate your immediate attention to this matter and would like to thank you in advance for your timely cooperation.  **If we do not receive your completed Decision Form by July 31, 2015, you will continue your currently authorized services until your next ISP.**  If you have any questions or concerns about this letter, please contact your case manager.

Sincerely,

Cathy Stevenson, Director
Developmental Disabilities Support Division

JDH:CS:bad
Enclosures:     Decision Form for Family Living or Supported Living Services
cc:             Case Management Agency

\\Abq-tamarack\ProData\006352-047090\Client Documents\2725310.docx

**DUE NO LATER THAN July 31, 2015**

> **TO BE COMPLETED BY DD WAIVER PARTICIPANT**
> **AND/OR HIS/HER GUARDIAN IF APPLICABLE**

## DECISION FORM FOR FAMILY LIVING OR SUPPORTED LIVING AND DAY SERVICES

1)      Full name, complete mailing address, telephone number, Social Security number and date of birth of DD Waiver Participant:

      _____

      _____

      _____

      _____

2)      Full name, complete mailing address and telephone number of Legal Guardian, if applicable:

      _____

      _____

      _____

3)      Full name, complete mailing address and telephone number of case management agency:

      _____

      _____

      _____

4)      Full name and telephone number of case manager:

      _____

      _____

**A.**      **With  regard to your living situation please select one of the two options below:**

☐      I prefer to return to the family living or supported living services I had prior to undergoing the SIS assessment and DD Waiver Group Assignment, or

☐      I prefer to remain in my current living arrangement.

**B.**      **With regard to your Day Services please select one of the two options below:**

☐      I prefer to return to the level of day services I had prior to undergoing the SIS assessment and DD Waiver Group Assignment, or

☐      I prefer to remain at my current level of day services.

Date: _____         _____

                                                  Signature of DD Waiver Participant or
                                                  Legal Guardian

**ATTACHMENT 5**

| TO BE COMPLETED BY CASE MANAGER |
|---|

## <u>ATTESTATION</u>

       I, _____ , case manager for _____ , hereby attest that I have received the letter dated _____ from Ms. Stevenson of DDSD including this form, and have discussed the letter and this form with _____ (DD Waiver Participant) and _____ (DD Waiver Participant's Guardian if Applicable).


Date: _____          _____
                                   Case Manager

\\Abq-tamarack\ProData\006352-047090\Client Documents\2724483.docx

NEW MEXICO
DEPARTMENT OF
H ALT

SUSANA MARTINEZ, GOVERNOR                    RETTA WARD, CABINET SECRETARY

[Letter date]

[Individual/Guardian Name]
[Address]

**Subject line (DDW 001):** Notice of New Mexico Department of Health/Developmental Disabilities Supports Division (DOH/DDSD) use of the Supports Intensity Scale®(SIS), NM DDW Group Assignments, DDW Service Packages, and individual right to appeal

Dear [Individual/Guardian],

The University of New Mexico, Center for Development and Disability ("CDD") is scheduling a support needs assessment called the Supports Intensity Scale® (SIS) for you. You will be receiving a phone call soon to schedule your SIS assessment. The SIS measures the pattern and intensity of support needs an individual with Intellectual or Developmental Disability (I/DD) has to live life in the community. The SIS is required for adults receiving DD Waiver services. Your SIS results are used in two ways:

1.  Your SIS results are used by your Interdisciplinary Team (IDT) to help plan for the use of natural and community supports.

2.  DOH/DDSD uses the SIS as a tool along with other information to place you in a NM DDW Group. Your SIS results will be reported in standard scores and percentiles which describe your support needs compared to a representative sample of individuals with I/DD. Knowing how your needs compare to others helps DOH/DDSD share resources in a fair way with many people in need in New Mexico.

Each NM DDW group describes individuals with a similar pattern of support needs. Each NM DDW group also has an array of service options available that generally meet the needs of the majority of individuals in that group.

The New Mexico Department of Health and the New Mexico Human Services Department use both the SIS and an outside clinical review process when developing annual service plans and budgets for each DD Waiver participant. **Please be aware that this process may result in a reduction or increase in services and benefits previously utilized by you. However, your existing services and benefits will remain in effect until (a) your annual Individual Service Plan and budget have received final approval or (b) the final resolution of any fair hearing decision or appeal.**

Prior to attending the SIS assessment, you may wish to educate yourself concerning how the SIS assessment is conducted. After your SIS assessment has been scheduled by CDD, CDD will mail

**DEVELOPMENTAL DISABILITIES SUPPORTS DIVISION**
810 San Mateo, Suite 204 • P.O. Box 26110 • Santa Fe, New Mexico • 87502-6110

**ATTACHMENT 6**

you a packet of information regarding the SIS assessment.  Here are additional resources for more information about the SIS:

    Access Community Together (ACT) New Mexico:  http://actnewmexico.org

    CDD website regarding SIS:  http://www.cdd.unm.edu/sis/index.html

    AAIDD website regarding SIS:  http://aaidd.org/sis

    DDSD Regional Offices (contact information at http://actnewmexico.org/contacts.html)

It is in everyone's best interest that your SIS assessment be successful.  During the SIS assessment, the SIS assessor is available to answer any questions that you may have.  If you do not understand the meaning of any question or score, or if you have any other questions for the SIS assessor, you should immediately ask the SIS assessor for clarification during the SIS assessment.  At the end of the SIS assessment, you will be asked to complete the SIS assessment checklist regarding how the SIS assessment was conducted.  This SIS assessment checklist will also provide you with an opportunity to note any additional questions or areas of disagreement.

Following your SIS assessment, and prior to developing your ISP, you will receive a DD Waiver Planning Packet that contains materials including your SIS results; information on how to request a SIS reassessment under certain circumstances; information on how to develop and submit your Individual Service Plan for outside clinical review; and notice of your fair hearing rights.

Sincerely,

Christina Hill
SIS Program Manager

Cc w/encls: [case manager]

Enclosure:

Notice of Right to Appeal

5/7/15   4:45pm

Draft of DD Waiver Planning Packet cover letter

Date:

[DDW Participant name, address]

[Legal Guardian name and address]

Dear DD Waiver Participant [and Legal Guardian (if applicable)]:

The New Mexico Department of Health and the New Mexico Human Services Department use both the Supports Intensity Scale ("SIS") and an outside clinical review process when developing annual service plans and budgets for each DD Waiver participant. The Interdisciplinary Team ("IDT") will have information from the SIS available to consider when developing a person-centered Individual Service Plan ("ISP"). The ISP and requested budget prepared by the IDT are then subject to the outside clinical review process.

Enclosed is your New Mexico DD Waiver Planning Packet. This packet includes information and resources to assist you in developing your annual ISP and submitting your ISP and requested budget to the outside reviewer. **Your existing services and benefits will remain in effect until (a) your annual Individual Service Plan and budget have received final approval or (b) the final resolution of any fair hearing decision or appeal.**

New Mexico uses a standard system to group individuals with similar supports needs together based on their SIS assessments. The services and supports provided in your DDW Group are generally appropriate for individuals with service and support needs similar to yours.

The IDT should consider the DDW Group's suggested service packages and proposed budget with the understanding that the focus must always be on the individual's DD Waiver support needs that can be clinically justified. The ISP must include specific clinical justification for the services and supports requested and the IDT must attach any documents appropriate to justify the recommended services and supports.

This New Mexico DD Waiver Planning Packet contains the following:

**ATTACHMENT 7**

1. *My Supports Profile* report—This report summarizes your current SIS assessment and profile results. This report also includes responses to Supplemental Questions and information about how your SIS results can be used in planning.

2. NM SIS Assessment Checklist. This is a quality assurance mechanism which is completed by respondents during your SIS assessment. It is used to help verify that key elements of the NM Scheduling and Interview Guidelines were followed.

3. NM DD Waiver Group Assignment Decision Rules.

4. Notice of your NM DDW Group assignment, associated service package, and proposed annual budget amount.

5. Instructions for submission of proposed Individual Service Plan and requested budget for outside clinical review.

6. Information on how to request a SIS reassessment.

7. Notice of Right to Appeal.

For more information on this and related topics, please refer to the ACT New Mexico website at http://actnewmexico.org/index.html. If you have questions, or if you want paper copies of instructions or information, please contact your Case Manager or your DDSD Regional Office.


Sincerely,


Roberta Duran

Bureau Manager


Cc:     [_____], Case Manager